26611, 26625.   THOMAS v. WOOD et al.; and vice versa.

Argued July 12, 1971—Decided September 27, 1971—
Rehearing denied October 21, 1971.

*Orr & Kopecky, Wilbur A. Orr, Lawson E. Thompson,* for appellant.

*Rupert A. Brown, Joseph J. Gaines, J. William Pierce,* for appellees.

Hawes, Justice. Frank W. Thomas filed in the Superior Court of Wilkes County a petition in which he alleged that he was the duly qualified and acting trustee under the will of Ethel A. Toombs; that Louise Toombs Reynolds and T. Willingham Wood were the life beneficiary and remainderman respectively under said trust; that, because of his health, trustee could no longer discharge his duties as trustee, and he prayed that he be permitted to resign and that a successor trustee be appointed. After the petition was filed, Louise Toombs Reynolds died and T. Willingham Wood filed a caveat to the application in which, as amended, he objected to the discharge of the trustee on several grounds. The trustee filed a motion to dismiss the caveat on numerous grounds, which after further amendment of the caveat were renewed and amended by the trustee. The substance of these grounds was that neither the caveat as a whole, nor any of its separate paragraphs set forth a claim against the trustee upon which relief could be had. T. Willingham Wood filed a motion for summary judgment and the trial court passed separate orders overruling the petitioner's motion to dismiss the caveat and overruling the motion for summary judgment filed on behalf of T. Willingham Wood. Both of these orders were certified for immediate review. The overruling of the motion to dismiss the caveat is the subject of the direct appeal and the overruling of the motion for a summary judgment is the subject of the cross appeal.

In 1960, Ethel A. Toombs made her last will and testament by the terms of which she created a trust estate for

the benefit of several named life tenants. By a codicil made in 1962 T. Willingham Wood was named as the sole remainderman. Mrs. Toombs died in March, 1963, seized and possessed of a tract of land described as containing 400 acres, more or less, which she had acquired in May of 1962 by. warranty deed from Shine Laundry, Inc. That deed recited that it was "given subject to a prior outstanding security deed from Shine Laundry, Inc., to Washington Loan & Banking Company." The original amount of that loan was $50,000, payable, principal and interest, in monthly instalments of $600 each. Mrs. Toombs, as the grantee in the warranty deed, did not assume payment of the said loan.

In September, 1964, Thomas, as trustee, sold that tract to Pope Lumber Sales Company for a recited consideration of $53,872. At that time, there was an outstanding balance due the bank on the note from Shine Laundry, Inc. of $33,183.20. In order to deliver clear title to the tract to the purchaser, Thomas, as trustee, entered into a written agreement with the bank whereby, in consideration of the bank executing to the purchaser a quitclaim deed, he assigned to the bank a certain certificate of deposit issued by the Georgia Railroad Bank & Trust Company in the amount of $33,000, and the bank agreed to accept and hold such certificate of deposit as security for the balance due on said loan of Shine Laundry, Inc., in lieu of the security deed to the 400-acre tract of land. Thereafter, Shine Laundry, Inc., defaulted in the payment of its debt to the bank and the bank sought to foreclose a bill of sale to secure debt covering equipment, machinery, trucks and other personalty of the laundry. That proceeding resulted in a directed verdict for the bank which was appealed to the Court of Appeals which reversed the decision of the trial court on December 3, 1965. See *Shine Laundry v. Washington Loan &c. Co.,* 112 Ga. App. 827 (146 SE2d 371).

After the decision of the Court of Appeals in that case, Thomas paid to the bank the then outstanding balance on the loan in the amount of $35,345.56 principal and interest. The caveators attack this payment as being an illegal

transaction for which the trustee should be held personally accountable. They contend that the execution of the substitution agreement was illegal and should be declared null and void. Under the will of Ethel A. Toombs, Thomas, as trustee, was granted extensive powers to manage the trust estate within his discretion and as he saw fit. He was empowered to sell, exchange or otherwise dispose of the trust property at public or private sale for cash or on terms; to retain, sell, invest and reinvest in any stocks, bonds, securities or other property, real or personal, which he deemed proper, necessary or expedient, without any responsibility for the exercise of his discretion except that of using ordinary care and without being confined to legal investments. He was empowered to renew any indebtedness, to borrow money and to secure the same by mortgaging, pledging or conveying any of the trust property; and, "to compromise, adjust or settle any claim or demand by or against the estate and to rescind or modify any contract affecting the estate." He was authorized to administer the trust "without making and filing inventory and appraisement, without filing any annual or other returns or reports to any court." He *was* required, however, to furnish "at least annually a statement of receipts and disbursements to the income beneficiaries."

■ As in the construction of ordinary wills, a will setting up a testamentary trust should be given effect according to its terms, and the obvious intent of the maker should be carried out unless to do so would violate some provision of the law or the public policy of this State. See *Love v. Fulton Nat. Bank,* 213 Ga. 887, 891 (102 SE2d 488). The language of the instrument in this case is plain and unambiguous. The powers given to the trustee are broad and all-encompassing. He was authorized to deal with the trust property in any way he saw fit and in his sole discretion and without the necessity of obtaining any order of court or of reporting to any court or officer whatsoever. In view of these broad powers, it cannot be said that he was unauthorized to make any reasonable agreement he could make with the

bank in order to secure the release of the property which he had sold to Pope Lumber Sales Company. The agreement for the substitution of the certificate of deposit as security for the loan in lieu of the deed to secure debt covering the 400 acres was entered into by him in return for the bank's agreement to execute a quitclaim deed to the property sold. This was a valuable consideration, since the bank released thereby a valuable security which it held against the property, which act, undoubtedly, enabled the trustee to consummate the sale of the property, and thus materially benefited the trust estate.

■ One of the contentions of the caveators is based upon the provisions of paragraph 2 of the escrow or substitution agreement to the effect that the certificate of deposit was to be security only "for any deficiency that may result in the event of a foreclosure by Washington Loan & Banking Company and the sale by it of all collateral" otherwise then held by it as security for said loan. They contend that in the *Shine Laundry* case the Court of Appeals held, in effect, that as a result of the bank's entering into the substitution agreement it no longer had the right to foreclose on the other collateral and that, therefore, there had been no foreclosure and no deficiency so as to render the security provisions of the substitution agreement operative. There is no merit in this contention. The purpose of paragraph 2 of the substitution agreement was simply to require the bank to look first to the other collateral in securing the payment of its loan before attempting to secure the payment of the same from the certificate of deposit. The record shows that the bank did just that, and we hold that the bank was entitled, pursuant to the substitution agreement, to secure the payment of the loan from the proceeds of the certificate of deposit if it was unable to secure the payment of the loan from any other security held by it. It follows that the trial court erred in overruling the motion to dismiss the caveat to the extent that the caveat sought to require the trustee to account for the $33,000 paid to the bank as proceeds from the certificate of deposit which had been deposited

with the bank as security for the repayment of the loan, and did not err in denying caveators' motion for a summary judgment insofar as it sought to have the court adjudge that such payment was an illegal payment and should be accounted for by the trustee.

■ Another ground upon which the caveators objected to the discharge of the trustee was that the payment to the bank of some $2,445.56 in accrued interest on the loan was an illegal payment and a donation of trust funds. As pointed out in the statement of facts, Ethel A. Toombs, upon acquisition of the 400-acre tract of land and upon accepting the deed thereto, accepted it subject to the outstanding deed to secure debt of Shine Laundry, Inc. to the Washington Loan & Banking Company. She did not, however, personally assume to pay that loan, and no personal obligation arose on her part by virtue of her acceptance of the warranty deed with that condition appended thereto unless she entered into some express agreement to become personally liable therefor and such agreement was assented to by the grantee in the deed to secure debt. No such agreement on her part appears. Under these circumstances, the trust estate created by her was not liable to pay the indebtedness of Shine Laundry, Inc., and no assets of the trust estate could be lawfully applied by the trustee to the payment of that indebtedness over and beyond the funds represented by the security interest in the 400-acre tract of land or the security interest in the certificate of deposit for $33,000 held by the bank in lieu of the land. It follows that the trial court did not err in holding that the caveat stated a claim for relief with respect to the payment to the bank of any amount in excess of the $33,000 embodied in the certificate of deposit. The record shows that the principal balance due as of the date the trustee paid off the bank was $32,900. The additional $100 remaining in the certificate of deposit could have been applied to the payment of accrued interest, but the trustee was not authorized to apply any other trust funds to pay interest accrued on such loan. The motion for a summary judgment sought to charge

the trustee with the payment of $2,445.56 in interest as an illegal payment. However, only $2,345.56 of the payment of interest was illegal under the holding which we have just made, and since movant did not seek a summary judgment in the exact amount to which he was entitled, it was not error for the trial court to refuse to grant a summary judgment as to this item.

■ The trustee paid out of trust funds court costs in the amount of $131.50, which was attributable to the case of *Shine Laundry v. Washington Loan &c. Co.*, 112 Ga. App. 827, supra. The trustee was not a party to that litigation and no authority appears for him to have paid the litigation expenses of the bank. It is argued that that litigation was for the benefit of the trust in that it was an attempt by the bank to save the trust the loss of the $33,000 embodied in the certificate of deposit. However, under the agreement entered into between the trustee and the bank, the bank was bound to use reasonable diligence in recovering out of other collateral the amount of its loan before looking to the certificate of deposit. It cannot be said that this was a legitimate expense of the trustee, and the court did not err in holding that the caveat stated a claim against the trustee for these items. To the extent that the motion for a summary judgment sought a summary judgment to require the trustee to account for the $131.50 paid out by the trustee in court costs, a judgment for the caveator was demanded and the trial court erred in overruling the motion for a summary judgment in that respect.

■ The trustee sold one of two adjoining city lots owned by the trust estate. An easement of access over the lot sold to the lot retained existed. The trustee did not incorporate in the deed words retaining that easement, and caveator contends that he should be charged with the diminution in the value of the remaining lot by reason of this failure. In view of the broad powers granted to the trustee in dealing with the trust property, it cannot be said that this action amounted to malfeasance or misfeasance for which he should be charged. At most, it amounted to an error in

judgment, or a mistake, and is not such a thing as he should be required to account for. Furthermore, the amount of diminution in value in the remaining lot is too speculative and remote to be recovered. It follows that the trial court erred in overruling the motion to dismiss the caveat insofar as it sought a recovery on the basis of this action.

■ With respect to the contention of the cross appellant that the trustee should be held liable for interest on all illegal payments, it is sufficient to say that this contention is meritorious and that, upon the entry of final judgment in this case, interest on all such illegal payments at the legal rate from the date of such payments should be allowed as an item to be paid by the trustee to the trust estate.

*Judgment on main appeal affirmed in part; reversed in part for the reasons stated in the opinion; judgment on cross appeal affirmed in part; reversed in part for the reasons stated in the opinion. All the Justices concur.*